IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RODGER DWAYNE STEPHENSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:19-CV-222-Z-BQ |
| | § | |
| GRAY COUNTY SHERIFF DEPT., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Under Special Order No. 3-251, this 42 U.S.C. § 1983 action was automatically referred to the undersigned United States Magistrate Judge for further proceedings. ECF Nos. 1, 5. Now before the Court is Defendants J.C. Skinner and Nathan Smith's (Defendants) Motion for Summary Judgment on the issue of qualified immunity, along with a brief in support and an accompanying appendix. ECF Nos. 50, 51, 52. Stephenson has filed no response. Based on the relevant filings and applicable law, the Court concludes that Defendants' Motion should be **GRANTED** for the reasons set forth below.

### I.    Background

Proceeding pro se and *in forma pauperis*, Plaintiff Rodger Dwayne Stephenson alleges through his Amended Complaint that Defendants violated his constitutional rights during and after his June 8, 2019, arrest. Am. Compl. 3–4, ECF No. 8.[1] The Court ordered Stephenson to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 29.

---

[1] Page citations to Stephenson's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Stephenson returned the questionnaire, signing his responses under penalty of perjury. ECF No. 32.

After reviewing the allegations in Stephenson's Amended Complaint, his questionnaire responses, authenticated records provided by the Gray County Sheriff's Office, and applicable law, the Court found that Stephenson alleged facts sufficient to survive preliminary screening as to his excessive force claim against Defendants, as well as his bystander liability claim against Defendant Smith.[2] ECF No. 34. The United States Marshal served Defendants, and they timely answered.[3] ECF Nos. 37, 48.

Defendants raised the affirmative defense of qualified immunity in their Answer (ECF No. 48) and thereafter filed the instant Motion for Summary Judgment. Through their Brief in Support of the Motion, Defendants argue their entitlement to qualified immunity because: (1) they used objectively reasonable force given Stephenson's resistance to arrest; (2) they did not violate Stephenson's constitutional rights; and (3) it would not have been clear to every reasonable officer that, due to Stephenson's resistance, the force used was unlawful. *See* Defs.' Br. in Supp. 11–16, ECF No. 51 [hereinafter Defs.' Br.]. Via a limited Scheduling Order (ECF No. 49) the undersigned ordered Stephenson to file a response to Defendants' Motion no later than Monday, June 28, 2021. Stephenson filed no response and, as of the date of this recommendation, has submitted no further filings in this action. Defendants' Motion is now ripe for review.

---

[2] By separate order the same day, the undersigned recommended dismissal of Stephenson's claims against Defendants Gray County Sheriff's Department, Gray County Jail Administrator "Mrs. Burns," Gray County Jail Center, Gray County 31st District Court, and the Gray County District Attorney, as well as his claim against Defendant Skinner for conversion. ECF No. 33. The district judge signed an order adopting these recommendations and a judgment dismissing the claims. ECF Nos. 38, 39.

[3] Prior to answering, Defendants Skinner and Smith filed a motion to dismiss the remaining claims against them. ECF No. 41. The Court dismissed Stephenson's claims against Defendants in their official capacities but required further pleadings on Stephenson's individual capacity claims. ECF No. 44, 46. These individual capacity claims are now before the Court.

## II.   Summary Judgment Standard and Qualified Immunity

Where the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the nonmovant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)); *Ramirez ex rel. Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2021 WL 3713064, at *3 (W.D. Tex. Aug. 20, 2021).

A defendant's good-faith assertion of qualified immunity, however, alters the usual summary judgment burden of proof, "shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (citations omitted); *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (holding that in summary judgment context, government official "need only plead qualified immunity, which then shifts the burden to the plaintiff"); *Staten v. City of Dallas*, No. 3:19-cv-843-L-BN, 2021 WL 3556671, at *3 (N.D. Tex. July 21, 2021), *R. & R. adopted by* 2021 WL 3550586 (N.D. Tex. Aug. 11, 2021). A plaintiff rebuts the defense by "establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the

3

reasonableness of the official's conduct." *King*, 821 F.3d at 654 (quoting *Gates*, 537 F.3d at 419); *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (confirming that a plaintiff seeking to overcome qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct" (internal quotation marks omitted)). To satisfy this burden, the plaintiff need not present "absolute proof," but must offer more than unsupported allegations. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (citing *King*, 821 F.3d at 654). Specifically, the plaintiff—as the nonmoving party—must identify evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *Renfroe v. Parker*, 974 F.3d 594, 599–600 (5th Cir. 2020).

In considering a summary judgment motion, courts must view all facts and inferences in the light most favorable to the plaintiff and resolve any disputed material facts in his favor. *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Nevertheless, "a [plaintiff] cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 995 (5th Cir. 1995). Moreover, where video evidence is available, the court may ignore a party's version of the facts when that version "is blatantly contradicted by the record," so that no reasonable jury could believe it. *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see Renfroe*, 974 F.3d at 599–600 (relying on the "unrebutted testimony . . . supported by [dash camera] video" to establish a record even where plaintiff claimed a genuine issue of material fact). "[A]lthough courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts

4

evident from video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). Importantly, this Court must not make credibility determinations or weigh evidence in ruling on such a motion. *Anderson*, 477 U.S. at 254–55.

Qualified immunity protects government officials performing discretionary functions from civil liability to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, a court must decide whether the facts alleged, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. at 236; *see Denson v. Hillhouse*, No. 6:20cv531, 2021 WL 3415187, at *11 (E.D. Tex. July 9, 2021) (quoting *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008)), *R. & R. adopted by* 2021 WL 3408487 (E.D. Tex. Aug. 4, 2021). Under the second prong, a court must determine whether the constitutional right in question was clearly established at the time of the alleged misconduct, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201–02. A court may address either prong first, depending on the circumstances particular to the case. *Pearson*, 555 U.S. at 236; *see Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009) (noting that "*Saucier*'s rigid 'order of battle'—requiring courts to always address the constitutional issue of whether alleged conduct violated the constitution—is now advisory under *Pearson*").

### III.   Factual Evidence Before the Court

**A. Because Stephenson filed no response to Defendants' motion, the only competent summary judgment evidence before the Court is that submitted by Defendants in support of their motion and any sworn factual statements contained in Stephenson's verified complaint and questionnaire responses.**

Stephenson did not file a response to Defendants' Motion for Summary Judgment or offer any evidence to create a genuine issue of fact as to Defendants' invocation of qualified immunity. "[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [Stephenson] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Marable v. Dep't of Com.*, No. 3:18-cv-3291-N-BN, 2021 WL 536510, at *4 (N.D. Tex. Jan. 28, 2021) (quoting *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam)).   "Although courts should advise *pro se* [parties] of procedural rules, [the Fifth Circuit has] held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices." *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citations omitted).

Nevertheless, the Court can consider a litigant's verified complaint as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(c). *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *see also Marable*, 2021 WL 536510, at *4 (noting that verified complaint "can be considered as summary judgment evidence" if it satisfies Rule 56's requirements).  Because Stephenson has not responded to Defendants' Motion, the Court looks only to the verified factual allegations in Stephenson's verified complaint and questionnaire

responses, as well as the ample, largely uncontested, summary judgment evidence provided by Defendants in support of their Motion.

Thus, the summary judgment record consists of the following:

1. Stephenson's Amended Complaint.  ECF No. 8.

2. Stephenson's questionnaire responses.  ECF No. 32.

3. Declaration of Chief Deputy J.C. Skinner.  Ex. A, Defs.' Br. App. 1–3, ECF No. 52.

4. Declaration of Deputy Nathan Smith.  Ex. B, Defs.' Br. App. 4–5.

5. Offense Report of Chief Deputy J.C. Skinner.  Ex. C, Defs.' Br. App. 6–13.

6. Body-Worn Camera Footage of Chief Deputy J.C. Skinner.  Ex. E, Defs.' Br. App. 16.

7. Body-Worn Camera Footage of Deputy Nathan Smith.  Ex. F, Defs.' Br. App. 17.

**B.  Statement of facts established by the competent summary judgment evidence.**

While on patrol the evening of June 8, 2019, Defendant Skinner recognized Stephenson, who was standing outside his residence.  Defs.' Br. App. 12.[4]  Defendant Skinner confirmed with dispatch that Stephenson had an active felony arrest warrant and, prior to approaching Stephenson's residence, requested backup from Defendant Smith.  *Id.*  Upon Defendant Smith's

---

[4] Stephenson did not object to Exhibit C, which contains a report authored by Defendant Skinner immediately following the June 8, 2019, incident.  Defs.' App. 6–13 (dated 06/08/2019, prepared at 10:30 p.m. (*id.* at 6)).  The document is identified as an "Offense Report" (Defs.' App. 2), and either it or its contents could be presented in admissible form at trial—through the affidavit of the record keeper or Defendant Skinner's live testimony.  Fed. R. Civ. P. 56(c); *see LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'").  While the report itself constitutes hearsay, it likely falls under at least two exceptions to Federal Rule of Evidence 803—Rule 803(6), the business records exception, and Rule 803(8), the public records exception.  "In the Fifth Circuit, Rule 803(8) reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness."  *Valentine v. Hodnett*, No. 5:14-CV-72, 2015 WL 12942069, at *3 (S.D. Tex. Sept. 16, 2015), *R. & R. adopted by* 2016 WL 806877 (S.D. Tex. Mar. 2, 2016).  Stephenson has presented no argument suggesting that Exhibit C is not trustworthy or that the Court should otherwise not consider it.  *See Hollie v. City of Bryan*, No. 4:17-CV-3339, 2019 WL 2336931, at *1 n.1 (S.D. Tex. May 31, 2019) (citing *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) and *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 275 (5th Cir. 1998)) (considering defendants' summary judgment evidence "despite the fact that many of the statements contained therein [were] arguably hearsay within hearsay," where plaintiffs failed to object).

arrival, Defendants approached Stephenson's home—Skinner could no longer see Stephenson but noticed that the front door to his home was open. *Id.* Defendant Skinner walked to the open door, announced his presence, and requested that Stephenson join Defendants to discuss the warrant. Ex. E, at 1:39–2:20;[5] Decl. of Chief Deputy J.C. Skinner 1, Ex. A, Defs.' Br. App. 1 [hereinafter Skinner Decl.]; Decl. of Deputy Nathan Smith 1, Ex. B, Defs.' Br. App. 4 [hereinafter Smith Decl.]. Hearing no answer, Defendants entered the home and continued calling for Stephenson to come out. Skinner Decl. 1.

With dusk approaching, visibility was reduced both in and outside Stephenson's home. *Id.*; Am. Compl. 4 (stating the arrest took place at about "5 to 8pm"). Defendant Skinner used his flashlight to sweep the living room and the front bedroom, where he found Stephenson crouching between the bed and the wall. Skinner Decl. 1; Ex. E, at 2:10–:38. Defendant Skinner commanded Stephenson three separate times to "get up" and once to "get your hand out from under the bed." Ex. E, at 2:38–3:00. Defendant Smith can also be heard simultaneously stating "get up bro or I'm going to tase you." Ex. F, at 2:08–:12; Ex. E, at 2:48–:50. Stephenson stated "I'm tryin' to get up, man" but failed to do so. Ex. E, at 2:58–3:02; Skinner Decl. 1; Smith Decl. 1–2. Defendant Smith again ordered Stephenson to "get your . . . hands up" and "let me see your left . . . hand." Ex. E, at 3:10–3:12; *see also* Skinner Decl. 1 (testifying that Stephenson's "right hand/arm was now on top of the bed and his left arm was under the bed").[6] Between the 3:14 and 3:20 mark, Defendant Skinner repeated his directive for Stephenson to get up ("alright, stand up"), evoking anther non-compliant response from Stephenson ("what're you doin' man") and causing

---

[5] Because much of Defendant Smith's body-worn camera footage is blocked by Stephenson's back, the Court relies primarily on the clearer footage provided by Defendant Skinner's body-worn camera.

[6] To this point in the video Stephenson's exact body position is blocked by the bedroom door; however, at various times his right elbow/arm can be seen resting on the bed (causing the bed to shake slightly as Stephenson moves), thereby confirming his torso is below the top of the mattress. His body position is further established by the video at the 3:21–:24 mark, where Stephenson is seen kneeling or crouching in a narrow space between the bed and wall.

Defendant Smith to twice command Stephenson, in quick succession, to "get your ass up." Ex. E, at 3:14–:20.[7]

Simultaneous with the officers' decision to move into the bedroom to obtain Stephenson's compliance, Stephenson stated "are you tryin' to shoot me, why're you gonna shoot me?" to which Defendant Smith responded "yeah, if you don't get your hand out." Ex. E, at 3:17–:25; Ex. F, at 2:40–:45.[8] Although Stephenson's hands cannot be seen in the video, his verbal responses to the officers are readily discernible, and at no point prior to the initiation of force does he express any intention of surrendering or complying with the officers' commands—at least fourteen of which are audible on Defendant Skinner's body-worn camera footage before Defendants enter Stephenson's bedroom. Ex. E, at 1:51–3:25. As the officers move in, the video shows, for a split second, that Stephenson has removed his left hand from under the bed and it is, at that instant, near his right arm on the mattress;[9] however, the video clearly shows Stephenson has not stood up as directed and that he could still access anything in his immediate vicinity, including under the bed. The video shows Defendants acting in tandem, with Skinner pulling Stephenson out by force and Smith placing him in a chokehold.[10] *Id.*; Smith Decl. 2; Ex. E, at 2:58–3:30.

Stephenson provides no specific sworn facts or testimony in direct response to Defendants' foregoing account and events as depicted in the video. Construed most favorably to Stephenson,

---

[7] At some point during this exchange, Defendant Skinner drew his taser, which can be seen in the video, and aimed it at Stephenson. Ex. E, at 3:10–:20. The timing of this roughly coincides with Defendant Skinner whispering to Smith to "get your gun." Ex. E, at 3:01–:04; Ex. F, at 2:23–:30. Defendant Smith—who had pre-existing knowledge that Stephenson owned multiple firearms—drew his duty weapon. Smith Decl. 2; Ex. F, at 2:23–:30.

[8] Defendant Skinner also states in his affidavit that during his interaction with Stephenson, he "heard a metal 'clank' sound" and "realized that [Stephenson] had something in his hand that had made contact with the bed frame." Skinner Decl. 2.

[9] The Court slowed the video playback to 30% to capture the brief image. Ex. E, at 3:21–:22.

[10] In their declarations and offense reports, both Defendants refer to Smith's technique as a "vascular neck restraint." In their Motion for Summary Judgment, Defendants acknowledge that this technique is commonly referred to as a "choke hold." Defs.' Br. 20. Because this is the more familiar term, and because higher courts typically use the phrase "chokehold," *see, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 97 (1983), this Court will use the same terminology.

the only summary judgment evidence before the Court describing Stephenson's version of the incident is that contained in his Amended Complaint and questionnaire response:

1. Stephenson was "assaulted with Tazer [sic], Beaten with fist [and] choked with hand up." Am. Compl. 4;

2. Defendant Skinner "Tazed me after I surrendered to him, while being Taze [sic] he came behind me and put his arm across my throat, then lock it with his other arm. I was choking for air and black-out. I was awaken from him beating me in the head." Questionnaire 2;

3. Stephenson "surrendered then he (Skinner) attack me." Questionnaire 3; and

4. Defendant Smith "[m]ade No effort to Stop the Abuse" allegedly committed by Defendant Skinner. Questionnaire 2.

While Stephenson differs slightly with Defendants Skinner and Smith on the exact order of events once the chokehold began, the parties broadly agree to the following: at least one Defendant placed Stephenson in a chokehold, one used a taser on Stephenson, and one struck him multiple times. Questionnaire 2; Skinner Decl. 2; Smith Decl. 2. Stephenson confuses which Defendant committed certain acts—for example, he alleges Deputy Skinner placed him in the chokehold while Deputy Smith tased him (Questionnaire 2). Because the video clearly contradicts Stephenson's account (and the distinction is immaterial for summary judgment purposes), the Court accepts Defendant's account that Smith placed Stephenson in the chokehold and Skinner tased Stephenson. *Scott*, 550 U.S. at 380 (holding that where video evidence is available, the court may ignore a party's version of the facts when that version "is blatantly contradicted by the record, so that no reasonable jury could believe it"); *Funari v. Warden of James V. Allred Unit*, No. 7:12-CV-011-O-DA, 2014 WL1168924, at *2 (N.D. Tex. Mar. 20, 2014) (finding the court could rely on video of the event when it blatantly contradicted the "visible fiction" offered by the plaintiff).

Once in a chokehold, Stephenson continued to struggle, resisting the restraint of Defendant Smith and refusing to place his hands behind his back in order for Skinner to handcuff him. Skinner Decl. 2; Smith Decl. 2; Ex. E, at 3:25–4:30. Stephenson claims in his Amended Complaint that at this point he was "choking For air and Black[ed]-out" (Am. Compl. 2), but Defendant Skinner's body-worn camera footage shows that Stephenson was verbal during the entirety of the encounter. Ex. E, at 3:25–4:30. Although not covered by the video, Defendants aver that Stephenson then attempted to grab Defendant Smith's holstered taser, so Defendant Skinner deployed his taser into Stephenson's upper chest. Skinner Decl. 2; *see* Smith Decl. 2. When Stephenson still did not follow orders to place his hands behind his back, Defendant Skinner again deployed his taser, this time into Stephenson's upper arm. Skinner Decl. 2; Ex. E, at 3:38–:41. Defendant Skinner's body-worn camera footage reflects that Defendant Smith began striking Stephenson in the head after the second tasing, but Defendant Smith was not aware of how many times Defendant Skinner had tased Stephenson. Ex. E, at 3:51–:55; Smith Decl. 2 (describing his hand strikes as occurring before either tasing, but explaining "[Deputy] Skinner may have deployed his Taser more than once"). Defendant Skinner then administered a drive stun into Stephenson's chest.[11] Skinner Decl. 2; Ex. E, at 3:55–4:00. In response, Stephenson attempted to grab Defendant Skinner's hand/taser during the struggle, which also resulted in his hands becoming wrapped in the taser wire. Ex. E, at 3:53–4:02; Skinner Decl. 2; Smith Decl. 2.

As Stephenson's resistance waned, Skinner pulled Stephenson's arms forward and handcuffed him. Skinner Decl. 2. Once Skinner handcuffed Stephenson, Stephenson stopped resisting and Defendant Smith released his chokehold. Skinner Decl. 2; Smith Decl. 2; Ex. E, at

---

[11] A drive stun is a taser technique that delivers electricity directly onto a suspect's person, rather than through a cartridge and metal probes. *See Carroll v. Ellington*, 800 F.3d 154, 163–64 (5th Cir. 2015) (providing further description of the drive stun technique).

4:30.  According to the video timestamp, the entire use of force lasted roughly one minute, five seconds. Ex. E, at 3:25–4:30.[12] Defendants removed Stephenson from his bedroom and Defendant Smith swept the area where Stephenson had originally been hiding.  Smith Decl. 2.  Smith found a loaded 12-gauge shotgun in the area under the bed where Stephenson's left hand had been.  *Id.* Stephenson was evaluated by EMS, who concluded he had sustained no major injuries.  *Id.*; Skinner Decl. 2.  Reading Stephenson's claim liberally, he alleges neck and back injuries resulting from the arrest, as well as ongoing pain from those injuries, though Stephenson does not allege that he presented with those injuries immediately following the arrest.  Questionnaire 2.

### C. The Court relies on the body-worn camera footage where it clearly portrays the events in dispute.

In sum, Defendants do not deny that they tased and struck Stephenson while he was in a chokehold.  Instead, the question before the Court is whether Defendants engaged in such conduct *after* Stephenson claims he surrendered.  Though Defendant Skinner's body-worn camera footage does not continuously show Stephenson's hands once Defendants initiated the use of force, it does show Stephenson's left hand grasping Defendant Smith's arm applying the chokehold (Ex. E, at 3:29–:30) and grasping either Skinner's hand or taser when he administered the drive stun (Ex. E, at 3:53–:55)[13]—however, it never shows any hand location or other gesture consistent with a "hand up" surrender position (as alleged by Stephenson), nor is any verbal expression of compliance or surrender heard on the audio.  Ex. E, at 3:25–4:30.  While the Court must analyze the facts in a light most favorable to Stephenson, the Court can nevertheless accept those portions of the video (and audio) that clearly support Defendants' testimony and "blatantly contradict[]" Stephenson's version of events. *See Scott*, 550 U.S. at 380; *Funari*, 2014 WL1168924 at *2.

---

[12] As measured from the point when Defendant Smith pulls Stephenson into a chokehold until the moment Skinner handcuffs Stephenson and Smith releases the chokehold.

[13] The Court again had to slow the video playback to 30% to capture these images.

## IV.   Discussion

Defendants Skinner and Smith move for summary judgment, alleging that qualified immunity precludes Stephenson's excessive force claim.  Defs.' Br. 11.  Stephenson's verified pleadings identify three specific acts that he alleges constitute unreasonable uses of force: (1) Smith's deployment of a chokehold to subdue Stephenson; (2) Skinner's use of a taser; and (3) Smith's strikes to Stephenson's head while he was in a chokehold.  *See* Questionnaire 2. Because Stephenson filed no formal response to the summary judgment motion, the Court considers his verified pleadings, i.e., Amended Complaint and questionnaire responses, in determining whether he has met his burden of establishing the existence of a disputed material fact as to each of the foregoing acts sufficient to overcome Defendants' qualified immunity.

### A.  Defendants have met their initial burden of raising the qualified immunity defense.

As previously explained, Defendants have raised the qualified immunity defense in both their Answer and Motion for Summary Judgment (*see* Defs.' Answer 2; Defs.' Br. 11–12), arguing they did not violate Stephenson's constitutional rights and that their conduct was objectively reasonable under the circumstances.  Defs.' Br. 13–16.  Having properly invoked the defense, Defendants have met their initial burden (*see Gates*, 537 F.3d at 419) and placed the onus on Stephenson to produce or identify evidence showing a disputed issue of material fact under the two-pronged qualified immunity test.  *Pearson*, 555 U.S. at 232 (modifying the requirements of *Saucier*, 533 U.S. 194).

### B.  Defendants are entitled to qualified immunity on the excessive use of force claim.

As Stephenson complains of events that took place during an arrest in his home, his claim is best characterized as "an arrest or investigatory stop of a free citizen . . . invoking the protections of the Fourth Amendment."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Because the Supreme

13

Court has made it clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard" (*id.* at 395), the Court first considers whether Stephenson has met his burden of alleging a violation of his Fourth Amendment right, before determining whether the officials violated law that was "clearly established" at the time of the incident.

To sufficiently state an excessive force claim, a plaintiff must show that he suffered: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). Courts consider the following non-exclusive criteria, known as the *Graham* factors, in evaluating whether an officer's use of force is excessive or objectively unreasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Darden v. City of Fort Worth*, 880 F.3d 722, 728–29 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted); *Tucker*, 998 F.3d at 171. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. While the reasonableness analysis is fact-intensive, *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008), it is ultimately a "pure question of law." *Scott*, 550 U.S. at 381 n.8.

**1. *Stephenson does not create a genuine issue of material fact as to Defendants'* *decision to use force.  Defendant Smith's use of a chokehold was objectively* *reasonable in response to Stephenson's resistance and lack of compliance.***

Stephenson alleges that he suffered injuries to his back and neck—as well as lingering pain and mental and emotional distress—as a direct result of Defendants Skinner and Smith's use of force placing Stephenson into a chokehold.  *See* Questionnaire 2.  Thus, this Court need only determine whether the evidence, viewed in the light most favorable to Stephenson, shows that his injury "resulted . . . from [a] use of force that was excessive to the need and that . . . the force used was objectively unreasonable." *Flores*, 381 F.3d at 396 (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).  The Court applies the *Graham* factors to first determine whether Defendants' decision to apply force and Smith's placement of Stephenson into a chokehold meet this standard.

### a.  *Severity of the Crime*

Neither party presented evidence concerning the subject matter of the arrest.  Defendant Skinner's Offense Report states that Skinner "believed that Stephenson had an outstanding felony arrest warrant," so he "contact[ed] dispatch [and] confirmed that [Stephenson] had a felony arrest warrant." Defs.' App. 12.  Thus, for the purposes of analyzing the reasonableness of Defendants' conduct, the Court finds that Defendants attempted to arrest Stephenson based on an outstanding felony warrant.  While the precise nature of the felony is unknown, and the severity of the crime is therefore subject to conjecture, even applying an assumption that the severity was low does not render the Defendants' subsequent actions per se unreasonable.  *See, e.g.*, *Batiste v. Theriot*, 458 F. App'x 351, 355 (5th Cir. 2012) (per curiam) (stating that "there is no doubt that chasing a suspect with an outstanding arrest warrant [for simple burglary] who was resisting arrest is objectively reasonable").  An arrestee's actions can quickly convert a relatively low-risk encounter into one of immediate danger for everyone involved.  *See, e.g.*, *Pinder v. Skero*, 375 F. Supp. 3d

725, 740–41 (S.D. Tex. 2019) (explaining that while plaintiff's initial crimes were not severe—defendant "only listed traffic violations as the cause for the stop"—"the combination of apparent intoxication, repeated noncompliance, pulling his hands away from [defendant's] grasp, and jerking his right arm back into a striking stance . . . transform[ed] a mere traffic stop into a more severe situation").

Moreover, "a subject's refusal to follow orders in the course of an arrest can be deemed active resistance" and "is properly considered under the first *Graham* factor," i.e., the severity of the crime the suspect has committed or is committing. *Backe v. City of Galveston*, No. 10-CV-388, 2014 WL 794025, at *11–12 (S.D. Tex. Feb. 27, 2014). As relevant here, Stephenson alleges that he had "surrendered" to Defendants prior to the initiation of force. *Id.*; *see* Am. Compl. 4. Stephenson does not, however, provide specific facts in any of his verified pleadings supporting this claim or demonstrating that a reasonable officer on the scene, perceiving the situation as presented to Defendants, would have construed Stephenson's actions as surrender or compliance. Stephenson does not contradict Defendants' allegation that his left hand was underneath the bed, holding something that caused a "metal clank" loud enough for Defendant Skinner to hear. Skinner Decl. 2. Nor does he deny Defendants' assertion that Defendant Smith later found a loaded shotgun in the area where Stephenson had his hand. Smith Decl. 2. Stephenson offers no evidence showing he pulled his hand out from under the bed or stood up when repeatedly directed by Defendants to do so, nor does he contend that he followed orders to place his hands behind his back. *See* Am. Compl. 4; Questionnaire 2. Defendant Skinner's body-worn camera footage establishes that Defendants gave Stephenson at least fourteen verbal commands prior to pulling

him up and placing him in a chokehold; Stephenson alleges no specific facts demonstrating compliance with a single one. Ex. E, at 1:51–3:25; *see* Am. Compl. 4; Questionnaire 2.[14]

Stephenson's actions concretely and rapidly escalated the gravity of the circumstances surrounding his arrest and the degree of force appropriate under those conditions. *See, e.g.*, *Pinder*, 375 F. Supp. 3d at 740–41 ("A reasonable officer on the scene could have perceived [plaintiff], at this point on the ground, to be actively resisting arrest, especially considering [plaintiff's] continued ability to talk and struggle throughout the entirety of the 'chokehold.'"); *Johnson v. City of Shreveport*, No. 17–0900, 2018 WL 3824380, at *3 (W.D. La. Aug. 10, 2018) (finding defendant's use of force was not excessive to the need in part because plaintiff was pulled over for driving recklessly and "refused to comply with the Defendant Officers' orders to lie on the ground"). For these reasons, the Court finds that the first *Graham* factor favors Defendants' decision to use force and Smith's initiation of a chokehold.

### b.  Immediate Threat to Safety of Officers or Others

The second *Graham* factor narrows the court's field of vision:  a court may only apply the "perspective of a reasonable officer *on the scene*," and no other. *Tucker*, 998 F.3d at 171 (quoting *Graham*, 490 U.S. at 396) (emphasis added).  In addition to the facts previously outlined above, Defendant Smith also had "prior information that Stephenson possessed multiple firearms," and interpreted his movements and conduct through this lens.  Smith Decl. 2.  Considering the body-worn camera footage and the supporting testimony of Defendants, the Court concludes that a reasonable officer would have perceived Stephenson as a threat to the public and the responding Defendants, particularly where Stephenson was noncompliant and reaching for what both

---

[14] Sans specific facts, Stephenson's bare contention that he "surrendered" fails to create a genuine issue of material fact where Defendants have provided sufficient evidence to establish that a reasonable officer on the scene would view Stephenson's actions—hand under the bed, failure to place hands behind his back, and failure to stand up—as resistance to arrest. *See Graham*, 490 U.S. at 396; *Tucker*, 998 F.3d at 171; *see also Melton*, 875 F.3d at 261 (explaining that a plaintiff "must offer more than mere allegations" to overcome an assertion of qualified immunity).

Defendants reasonably believed could be a firearm or other weapon. *See, e.g.*, *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016) ("A reasonable officer, moreover, could have perceived [plaintiff] as an immediate threat. As long as [plaintiff] remained in his pickup, he posed a potential danger to the officers and others."); *Clark v. City of Shreveport*, No. 15-2631, 2017 WL 7726739, at *5 (W.D. La. Aug. 14, 2017) (concluding defendant's actions were objectively reasonable, where defendant "delivered two palm heel strikes to [p]laintiff's face" after plaintiff resisted and reached toward his waistband), *R. & R. adopted by* 2018 WL 934618 (W.D. La. Feb. 16, 2018). Using a chokehold in an attempt to arrest a suspect who is refusing to follow commands (and thereby jeopardizing officer safety) and physically resisting is objectively reasonable under these circumstances. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) (finding that a chokehold and chemical spray were appropriate in the case of a suspect physically resisting arrest, even where the suspect subsequently died of asphyxiation); *Griggs*, 841 F.3d at 313–14 (concluding that "a late-night traffic stop involving a[n] . . . individual[] stating 'no, no,' *in the act* of being handcuffed, immediately following the command to 'put your hands behind your back' . . . would, to a reasonable police officer, amount to resistance to arrest"); *Pinder*, 375 F. Supp. 3d at 741. Thus, the second *Graham* factor supports a finding that Defendant Smith's use of force was objectively reasonable.

### *c. Actively Resisting Arrest or Attempting to Evade Arrest by Flight*

The Court finds that the third *Graham* factor also weighs in Defendant Smith's favor. Stephenson asserts that Defendants continued to tase and choke him "after [he] Surrendered to" Defendants. Questionnaire 2. But as explained above, Stephenson's contentions, to the extent they constitute admissible summary judgment evidence, are refuted by the body-worn camera video as corroborated by Defendants' corresponding testimony. The video and accompanying testimony show that Stephenson did not comply with Defendants' attempts to speak with

Stephenson outside his home (by calling out to him from his porch and later from outside his bedroom). Skinner Decl. 1; Ex. E, at 2:10–:38. Stephenson never obeyed their multiple commands that he show his hands, remove his hand from what they reasonably believed could be a weapon, or stand up. Skinner Decl. 1–2; Smith Decl. 2. Faced with a noncompliant suspect that he knew to own or possess firearms (Smith Decl. 2), Defendant Smith attempted to neutralize the threat that Stephenson posed to Defendants by placing him in a chokehold. *Id.* Defendant Smith continued his use of the chokehold for as long as Stephenson continued resisting arrest and ceased using the chokehold as soon as Defendant Skinner placed Stephenson in handcuffs. Smith Decl. 2; Skinner Decl. 2; Ex. E, at 4:30.

Because Stephenson continued to resist arrest and refused to comply with Defendants' orders, the third *Graham* factor weighs in favor of the use of force. *See Brothers*, 837 F.3d at 520 (noting that the approximately two minutes defendant officer spent negotiating with plaintiff before physically removing him from the running vehicle "was not objectively unreasonable, "especially in light of, *inter alia*, [plaintiff's] explicit and repeated refusal to comply with [defendant's] requests to exit the pickup and the possibility that [plaintiff] might have had access to a weapon" or could have attempted to flee in his vehicle); *Pinder*, 375 F. Supp. 3d at 743 (stating that plaintiff's refusal "to yield his hands," continuous struggle with defendant, and forcible resistance to "all of [defendant's] attempts to gain control of the situation," could have led a reasonable officer to believe plaintiff was resisting arrest, despite the video showing that plaintiff "was not an active flight risk").

In sum, all three *Graham* factors weigh in favor of Defendant Smith's use of force in placing Stephenson in a chokehold. The Court therefore concludes that the chokehold did not amount to an objectively unreasonable use of force.

**2. Defendant Smith's strikes to Stephenson's head while in a chokehold constitute an objectively reasonable use of force.**

Stephenson contends that he blacked out when Defendant Smith placed him in a chokehold, but "was Awaken[ed] from [Smith] Beating [Stephenson] in the Head." Questionnaire 2. The body-worn camera footage and corroborating testimony show, however, that for the entire duration of Defendant Smith's chokehold Stephenson was conscious and verbally responding to officers. Ex. E, at 3:25–4:30; Skinner Decl. 2 ("Deputy Smith placed his right arm around Ro[d]ger Stephenson's neck in what is referred to as a vascular neck restraint. Multiple commands were given, but Plaintiff Stephenson resisted and fought to maintain control of both of his hands/arms."); Smith Decl. 2. Defendants testify—and Stephenson's verified pleadings do not dispute or deny— that at the time Defendant Smith placed Stephenson in a chokehold, Stephenson began reaching for Smith's holstered taser: "Stephenson then began grabbing for my taser which was holstered. I then started hitting him with my left hand to get him to stop grabbing my taser and to try and gain compliance." Smith Decl. 2. And, the video further shows Stephenson grabbing both Smith's arm (applying the chokehold) and Skinner's hand/taser during the struggle. Ex. E, at 3:29–:30; 3:53–:55.

As for the first *Graham* factor—the severity of the crime—the same reasoning applies as in Section IV.C.1.a. above. Moreover, despite being held in a chokehold by Defendant Smith, Stephenson remained a threat to the officers—i.e., the second *Graham* factor—and in fact increased that threat level by continuing to resist and reaching for Smith's weapon. Smith Decl. 2; Skinner Decl. 2 ("The situation became very tense and uncertain because Stephenson was resisting and grabbed Defendant Smith's holstered taser."). Stephenson was not yet handcuffed, despite multiple commands to place his hands behind his back, nor had Defendants had the opportunity to search him for weapons. *See, e.g.*, *Poole v. City of Shreveport*, 691 F.3d 624, 629

(5th Cir. 2012) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)) ("Because [plaintiff], upon refusing to turn around and be handcuffed, posed an 'immediate threat to the safety of the officers' and 'actively resist[ed]' the officers' instructions, the use of force was not 'clearly excessive.'"); *Rodriguez v. City of Grants*, No. CV 13-344 WPL/SCY, 2014 WL 12789669, at *3 (D.N.M. July 7, 2014) ("Because [plaintiff] would not allow himself to be handcuffed, he continued to pose an immediate threat to the safety of the officers and others.").

Finally, although Stephenson alleges he had "Surrendered" to Defendants at the time of being tased and struck (*see* Questionnaire 2; Am. Compl. 4), the video clearly shows that Stephenson continued to resist, and Defendant Smith struck him in an attempt to gain compliance. Ex. E, at 3:50–:53. Both Defendants can be heard repeatedly telling Stephenson to put his hands behind his back while Smith administers the blows, but Stephenson failed to do so and instead grabbed at both Smith's arm and Skinner's hand/taser. Thus, all three *Graham* factors weigh in Defendant Smith's favor and support a finding that the hand strikes were objectively reasonable. *See, e.g.*, *Bozung v. Rawson*, 439 F. App'x 513, 521 (6th Cir. 2011) (concluding officer used objectively reasonable force when he kneed plaintiff, who was on the ground, because plaintiff was not "neutralized" and defendant was still trying to handcuff him); *see also Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) ("When [plaintiff] persisted in lying on his hands, it was reasonable to pull them forcibly behind his back, where they could be cuffed."); *Priest v. Grazier*, No. 2:19-cv-004-Z-BQ, 2020 WL 3421487, at *11 (N.D. Tex. May 28, 2020) (finding that defendant's knee strike to plaintiff who continued to resist after being handcuffed was not unreasonable), *R. & R. adopted by* 2020 WL 3420938 (N.D. Tex. June 22, 2020), *aff'd*, 2021 WL 2653495 (5th Cir. June 25, 2021).

### 3.  Defendant Skinner's use of a taser on Stephenson while in a chokehold, but before he was handcuffed, does not amount to an objectively unreasonable use of force.

Stephenson lastly asserts that Defendant Skinner's use of a taser while Stephenson was in a chokehold constituted unreasonable force.   Questionnaire 2 ("He Tazed [sic] me after I Surrendered to him . . . ."); Am. Compl. 4. According to Stephenson, he was "assaulted with Tazer [sic], Beaten with fist [and] choked with hand up."  Am. Compl. 4.  The video, however, never shows Stephenson putting his hands up throughout his altercation with Defendants, nor verbalizing any indication of surrender. Ex. E, at 3:25–4:30.  Throughout the chokehold, Defendant Skinner continuously yells "Put your hands behind your back!" as Stephenson either replies with grunts or "I can't."  Ex. E, at 3:30–4:15.  Stephenson does not allege in his verified pleadings that he attempted to comply and was unable, but instead claims that he had in fact already surrendered, a point already addressed and resolved in Defendants' favor.  Moreover, portions of the video belie any claim by Stephenson that he in fact attempted to comply, as illustrated by him grasping Smith's arm and Skinner's hand/taser.

Turning to the *Graham* factors, the Court concludes that all three again weigh in Defendant Skinner's favor.  As for the first *Graham* factor—the severity of the crime—the same reasoning applies as in Section IV.C.1.a. above.  Second, although he was in a chokehold, Stephenson did not demonstrate compliance or cease resisting. Ex. E, at 3:25–4:30.  Importantly, Stephenson remained an increased risk to the officers in spite of the hold.   Defendants agree that notwithstanding Skinner's deployment of his taser, Stephenson did not submit to the officers and continued reaching for their weapons:

> However, [tasing him] did not stop Stephenson from continuing to resist arrest by reaching for [Defendant Smith's holstered] taser.  Therefore, I again deployed my Taser X2 with two probes striking Stephenson in his upper arm.  This still did not cause Stephenson to comply and he continued to resist arrest by refusing to put his arms behind his back and grabbing for the taser.

Skinner Decl. 2; Smith Decl. 2 ("Chief Skinner deployed his Taser and this struck Stephenson, but he did not stop fighting us.")  When the taser did not subdue Stephenson, Defendant Skinner deployed a three-point drive stun, but Stephenson attempted to take the taser from Skinner's hands. Ex. E, at 3:53–4:05 (showing Stephenson's hand grasping Skinner's hand/taser and Stephenson's hand wrapped in the taser wire, stretched toward Skinner); Skinner Decl. 2 ("Stephenson then grabbed my Taser and began trying to pull it out of my hands."); Smith Decl. 2 ("Chief Skinner used his three-point drive stun on Stephenson.  At this point Stephenson grabbed it and tried to take it away.").  Only after Defendant Skinner used his drive stun, while Defendant Smith continued to maintain the chokehold, was he able to secure Stephenson with handcuffs.  Upon cuffing Stephenson, Defendants instantly stopped all use of force.  Ex. E, at 4:30; Skinner Decl. 2 ("Once the handcuffs were place[d] on Stephenson[,] Defendant Smith released his neck area."); Smith Decl. 2 ("I immediately released Stephenson from the neck hold once he complied.").

Stephenson has presented no summary judgment evidence to dispute the video or Defendants' testimony.  Nowhere in his verified pleadings does he address or refute Defendants' allegations that he:  (1) refused to stand; (2) reached for or had access to a weapon under his bed; (3) reached for Defendant Smith's holstered taser; and (4) attempted to grab Defendant Skinner's taser after the drive stun.  Thus, Stephenson does not create a genuine disputed issue on these facts. *Renfroe*, 974 F.3d at 599 ("The district court cannot be said to have resolved conflicting facts in favor of [the defendant], however, because [plaintiff] did not offer any competent evidence of her own alleged facts. . . . [She] did not submit an affidavit describing what she saw . . . .  And the allegations in her complaint are insufficient.").

Construing the summary judgment evidence before the Court in conjunction with the three *Graham* factors, Defendant Skinner's use of a taser was not clearly excessive to the need or objectively unreasonable.  "[W]here a suspect resists arrest or fails to follow police orders, officers

do not violate his right against excessive force" by using force to obtain compliance, including

through the use or deployment of tasers. *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307,

314 (5th Cir. 2013) (finding that suspect's failure to distance himself from weapon as directed by

officers precluded him from establishing a genuine disputed material fact as to whether officer's

attempt to subdue him by tasing was "clearly excessive to the need" and "objectively

unreasonable").

Moreover, Stephenson's generalized assertions and denials set forth in his verified

pleadings create no triable fact for a jury—proper qualified immunity analysis requires only that

the Court determine whether an objectively reasonable officer in Defendants' position *could have*

interpreted Stephenson's noncompliance and arm movements as resisting arrest and threatening

an officer. *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011); *see Guerra v. Bellino*,

703 F. App'x 312, 317 (5th Cir. 2017) (per curiam) (explaining that plaintiffs' assertion that the

video did not definitively show decedent "attacking" defendant "misapprehend[ed] the qualified

immunity standard," which "requires that an objectively reasonable officer in [defendant's]

position believe [the plaintiff] posed a threat of serious harm"); *Griggs*, 841 F.3d at 313 (explaining

that although "a reasonable jury might find that [plaintiff] was not *actually* resisting," based on

"his testimony and the ambiguities in the video," "proper inquiry" was a measure of the force used

"under the facts as a reasonable officer *would perceive them*, not necessarily against the historical

facts"); *Hutcheson v. Dallas Cnty.*, No. 3:17-CV-2021-BN, 2020 WL 1692950, at *16 (N.D. Tex.

Apr. 7, 2020) (finding that defendants were entitled to qualified immunity based on facts "[a]s

depicted by the video and from the perspective of a reasonable officer on the scene"), *aff'd*, 994

F.3d 477 (5th Cir. 2021); *Estate of Sizer ex rel. Sizer v. Cameron*, No. A–15–CA–01143–SS, 2017

WL 2418316, at *10 (W.D. Tex. June 1, 2017) (finding second *Graham* factor warranted officer's

use of force where although decedent's resistance was mostly passive, "the calculus of

24

reasonableness depends on the totality of the circumstances as viewed by a reasonable, on-the-scene officer without the benefit of retrospection," and defendant's testimony reflected that she "possessed an objective and reasonable belief that [decedent] posed an immediate threat to [the officers'] safety").

It is also important to note that, while the Court has analyzed the three uses of force separately (in the manner alleged by Stephenson in his Amended Complaint), the use of force incident lasted roughly one minute, five seconds. The elapsed time between initiation of Smith's chokehold and Skinner's use of a taser is fourteen seconds. Ex. E, at 3:25–:39. Defendant Smith began his hand strikes eleven seconds later. Ex. E, at 3:51. Forty seconds later, Stephenson allowed Defendants to place him in handcuffs. Ex. E, at 4:30. The short periods of time between these moments—punctuated by the relatively brief intervals where Defendants used each type of force—highlight the "rapidly evolving" nature of the entire incident, which courts must consider in applying the "calculus of reasonableness" and determining the amount of force necessary in a particular situation. *Graham*, 490 U.S. at 397; *see Curran v. Aleshire*, 800 F.3d 656, 662 (5th Cir. 2015) (quoting *Poole*, 691 F.3d at 625–26) (acknowledging the Fifth Circuit has "repeatedly recognized" that "officers are afforded considerable latitude in 'tense, uncertain, and rapidly evolving' situations," particularly where a plaintiff is resisting at the time of the force); *see also Priest*, 2020 WL 3421487, at *11 (noting that an entire use of force lasting "roughly one-and-a-half minutes" was "rapidly evolving"); *Bryant v. Gillem*, No. 2:18-CV-122-BR, 2019 WL 5647058, at *10–11 (N.D. Tex. Oct. 31, 2019) (stating that the short intervals of force, specifically the five seconds defendant "seized" plaintiff by training his gun on her, supported the claim that the situation was "rapidly evolving").

The Court further observes that this incident arose because Stephenson rebuffed Defendants' efforts to speak with him about an active felony warrant and refused to comply with

Defendants' orders to get up and place his hands where they could see them. Defendants did not know, at the time of their uses of force, whether Stephenson's reluctance to comply was because of criminal intent (e.g., concealing a weapon) or some other reason, but they did know that Stephenson owned multiple firearms. Smith Decl. 2.[15] "As depicted by the video and from the perspective of a reasonable officer, the Court cannot find that [Defendants] used excessive force against [Stephenson] . . . ."[16] *Hutcheson*, 2020 WL 1692950, at *16. Defendants Skinner and Smith's use of non-lethal force to subdue Stephenson, even if questioned by an armchair quarterback not entering an arrestee's dimly lit home at nightfall, was not objectively unreasonable, particularly under the circumstances considered as a whole. *See Malbrough v. Stelly*, 814 F. App'x 798, 806 (5th Cir. 2020) ("We cannot allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." (internal quotation marks omitted)); *Griggs*, 841 F.3d at 315 ("[Defendant's] actions [leg sweep and body slamming plaintiff, a "drunken, erratic suspect,"] may not have been as restrained as we would like to expect from model police conduct, but qualified immunity 'protect[s] officers from the sometimes hazy border between excessive and acceptable force.'" (quoting *Saucier*, 533 U.S. at 206)).

For these reasons, the Court concludes Stephenson has not shown that Defendants violated his constitutional rights—i.e., that a reasonable officer would not have perceived Stephenson as resisting and posing a threat to Defendants, thereby necessitating a use of force—and finds that his excessive force claims against both Defendants should be dismissed.

---

[15] This evidence does not serve as a linchpin for the Court's decision. Even absent Defendant Smith's prior knowledge of Stephenson's possession of firearms, Stephenson's conduct justified the use of force, particularly where his hand and body position afforded him potential access to weapons of any kind.

[16] Similarly, the minimal injury Stephenson attributes to Defendant Smith's actions also leads this Court to the inescapable conclusion that the force Defendants applied was reasonable.

### 4. *Defendants' actions did not violate clearly established law.*

Step two in the qualified immunity analysis requires that the Court determine whether Defendants violated law that was "clearly established" at the time of the incident. *Pearson*, 555 U.S. at 232. Stephenson's inability to establish this element provides an alternative basis for dismissing his excessive force claims. A constitutional right is "clearly established" if it is "one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). Courts must not "define clearly established law at a high level of generality"; instead, their "inquiry must be undertaken in light of the specific context of the case." *Id.* at 12 (citations omitted).

Generally, to meet this standard, "the plaintiff must 'identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and . . . explain[] why the case clearly proscribed the conduct of that individual officer.'" *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)) (concluding plaintiffs failed to identify clearly established law that "obvious[ly]" applied to defendants). A plaintiff need not provide a case perfectly on point, but the parameters of the officer's violative act must be "beyond debate." *Id.* (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)). Because Stephenson has not responded to Defendants' Motion, the Court draws Stephenson's arguments from his verified pleadings. Nonetheless, the Court still must apply the rigid standards of a qualified immunity review.

As previously discussed, Stephenson has not met his burden of showing that Defendants Skinner and Smith violated his constitutional rights. Even assuming, however, Stephenson could satisfy this element, summary judgment would still be appropriate because Stephenson has not

shown that the right at issue in this action was clearly established at the time of Defendants' alleged misconduct.

It is plaintiff's burden to "point to case law clearly establishing that [defendants] acted unreasonably based on facts similar to the particular circumstances they faced . . . ." *Hale v. City of Biloxi*, 731 F. App'x 259, 264 (5th Cir. 2018). Stephenson has failed to satisfy this criterion. Defendants have properly raised the qualified immunity defense, so Stephenson bears the burden at this stage of showing that "every reasonable official" in Defendants' position would understand that Defendants' alleged conduct violated Stephenson's constitutional rights. *Mullenix*, 577 U.S. at 11; *see Gates*, 537 F.3d at 419. This Stephenson has wholly failed to do. He has not responded to Defendants' Motion for Summary Judgment, provided evidence in support of the position that Skinner is not entitled to qualified immunity, or made any competent factual allegations against Skinner in his verified Amended Complaint and, as a result, has failed to demonstrate a violation of law so clearly established that every officer would know such conduct was unreasonable. *See, e.g.*, *Cooper v. Flaig*, 779 F. App'x. 269, 271 (5th Cir. 2019) ("[R]ecent Fifth Circuit precedent involving taser deployment suggests an officer's use of force is justified where two or more of the *Graham* factors support the use of force," so "clearly established law would not have put a reasonable officer on notice that deployment of a taser . . . was unreasonable" (citations omitted)). Skinner is entitled to summary judgment on the issue of qualified immunity and dismissal of the claim against him.

Smith is entitled to summary judgment on the issue of qualified immunity for the same reasons. Defendants' factual account of the incident and the video evidence demonstrate that, under the circumstances presented, not every reasonable officer would know that Smith's actions violated the Constitution: it was appropriate to respond to Stephenson's refusal to obey commands by physically restraining him, and it was reasonable for Smith to strike Stephenson—to both

defend himself and attempt to gain compliance—after Stephenson resisted and Defendants perceived he had the potential to access a weapon and had in fact reached for their weapons. Stephenson's bare assertion that he had "surrendered" fails to refute Defendants' account of the event or show that Smith's actions were so unorthodox that "every reasonable official" in his position would know that the force he used was excessive and unconstitutional. *Mullenix*, 577 U.S. at 11; *see Gates*, 537 F.3d at 419. Because Defendants have offered summary judgment evidence showing that Smith's actions were reasonable under the circumstances, and Stephenson has failed to meet his burden to show that Smith acted unreasonably and unconstitutionally, Smith is entitled to summary judgment on the issue of qualified immunity.

In sum, Stephenson cites no case law in his Amended Complaint or his questionnaire to demonstrate that Defendants' conduct violated "clearly established" law at the time of his arrest. *See Joseph*, 981 F.3d at 345. Viewing the facts in the light most favorable to Stephenson as non-movant, Stephenson nevertheless resisted arrest and failed to comply with Defendants' repeated commands throughout their interaction. Proper resolution of the second qualified immunity element requires a finding that Defendants did not violate clearly established law and are entitled to summary judgment as to Stephenson's excessive force claims. *See Williams v. City of Cleveland*, 736 F.3d 684, 688 (5th Cir. 2013) (finding no violation of clearly established law where defendants tased resisting suspect who also reached for officer's taser and gun, and was unfazed by initial tasing); *Priest*, 2021 WL 2653495, at *5 (affirming that defendants did not violate clearly established law by kneeing handcuffed suspect in the back when a reasonable officer would have perceived suspect's actions as resistance); *Surratt v. McClaran*, 234 F. Supp. 3d 815, 826 (E.D. Tex. 2016) (acknowledging that chokeholds are not "constitutional violations on their face"), *aff'd*, 851 F.3d 389 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 147 (2017); *Graniczny v. City of El Paso*, 809 F. Supp. 2d 597, 612–13 (W.D. Tex. 1992) (holding that where "[o]fficers provided

[defendant] with ample opportunity to cease his evasion and he refused to do so," and the summary judgment evidence "paint[ed] a picture of a quickly evolving scene replete with unknown variables," requiring officers "to make split-second judgments," qualified immunity requires that courts "allow[] reasonable discretion for their actions"); *see also Malbrough*, 814 F. App'x at 805 ("[I]t's not relevant whether, in hindsight, [defendant] was ever in real danger. We must ask whether it would have *appeared* to a reasonable officer on the scene that [defendant] . . . [was] in danger.").

### C. Defendant Smith is also entitled to qualified immunity for bystander liability.

The Court previously recognized that two of Stephenson's claims survived preliminary screening: (1) a claim for excessive use of force against both Defendant Skinner and Defendant Smith; and (2) a claim of bystander liability against Defendant Smith. ECF No. 34, at 2 ("[T]he Court finds that Stephenson's claims against [Defendants] Skinner and Smith for excessive use of force as well as against [Defendant] Smith for bystander liability survive preliminary screening."); ECF No. 39 ("The only claims remaining are those against Defendants Skinner and Smith seeking 42 U.S.C. § 1983 damages for excessive force and against Defendant Smith for bystander liability."). Defendant Smith does not address the bystander liability claim in the Motion or Brief. *See* ECF Nos. 50, 51. Nevertheless, Rule 56(f)(2) provides that a district court may, "after giving notice and a reasonable time to respond," grant a motion for summary judgment "on grounds not raised by a party."

### 1. The Court may grant summary judgment on Stephenson's bystander liability claim despite Defendant Smith's failure to specifically address the claim in his Motion— Stephenson had notice of the motion for summary judgment, which included briefing by Smith on an element essential to recovery on Stephenson's bystander claim.

To grant summary judgment on an issue omitted from a motion, the non-movant merely needs to be "on notice that a matter *could* be grounds for summary judgment," and "the standard

for notice is quite low." *Cobb v. James Constr. Grp., LLC*, No. 5:17CV208-CMC, 2020 WL
3516079, at *4 (E.D. Tex. Apr. 14, 2020) (emphasis added) (quoting *Williams v. United Parcel
Serv., Inc.*, 757 F. App'x 342, 344 (5th Cir. 2018)).  The notice required is so nominal that "an
issue mentioned a single time in a footnote [is] sufficient notice." *Williams*, 757 F. App'x at 344
(citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)).

This Court issued a Scheduling Order, dated April 27, 2021, requiring Defendants to "file
a motion for summary judgment with supporting evidence on the issue of qualified immunity" by
May 27, 2021 (ECF No. 49, at 2), to which Stephenson was to "file a written response . . . with
controverting evidence no later than" June 28, 2021.  *Id.* at 3.  Defendants filed their Motion and
Brief in Support on May 27, 2021.  ECF Nos. 50, 51.  Stephenson has been on notice since the
Court's order requesting briefing on the question of qualified immunity—a defense that applies to
both extant claims—and certainly since the Defendants' May 27, 2021, Brief providing the factual
basis for their motion, that the Court could grant summary judgment on the qualified immunity
defense as invoked by Defendants in their Motion.  With more than 120 days' notice, Stephenson
cannot allege that he had "no reason . . . to suspect that the court was about to rule on the motion."
*Resol. Tr. Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1402 (5th Cir. 1993)
(citation omitted).

More importantly, Stephenson cannot plausibly deny notice that the specific issue of
whether Defendants' conduct violated the Constitution, which is a necessary element for recovery
under bystander liability, was before the Court and subject to final resolution.  Granted, Defendants
only referenced the bystander liability claim in a footnote to their Answer (ECF No. 48, at 1 n.1)
and did not expressly mention it in their Brief.  *See* ECF No. 51.  Nonetheless, Defendants provided
sufficient summary judgment evidence and briefed the relevant law on a required element of the
claim—excessive use of force—that, combined with the Court's explicit direction regarding

31

briefing on qualified immunity in prior orders—placed Stephenson on notice that the question of excessive force, whether as a stand-alone claim or a necessary element for him to prevail on his bystander liability claim, was before the Court and in play. *See Jones v. City of Houston*, No. 99-20468, 2000 WL 821589, at *1 (5th Cir. June 1, 2000) (holding that where the parties discussed the underlying facts of a claim in their briefing, the court "did not grant summary judgment on an issue not addressed by the parties" (citation omitted)).  Moreover, where a court grants summary judgment as to a claim against one defendant, and an identical element of proof is required for the same claim against another defendant, the court may sua sponte grant summary judgment on that issue without notice or the issue being raised in the other defendant's motion. *Bullard v. City of Houston*, No. 97-20203, 1997 WL 803101, at *4 (5th Cir. Nov. 26, 1997) (per curiam) (holding that lower court did not err in dismissing the plaintiff's claim against city on grounds other than those requested in motion for summary judgment, where plaintiff "should have been aware of the identical elements of proof needed" for claims against both parties and "chose not to respond" to the motion or offer controverting evidence).  "In essence, a district court has the ability to grant a summary judgment on facts not briefed by the movant, as long as the non-movant has notice of the issue." *Id.*  For the foregoing reasons, the Court addresses the issue of bystander liability *sua sponte*.

> ## 2. Stephenson's claim of bystander liability fails because he has not established a constitutional violation or excessive use of force.

An officer is liable for a § 1983 claim of bystander liability when he "is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force . . . ." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  The claim has three elements: "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Hamilton v.*

*Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).  If the court determines "that the alleged conduct did not violate a constitutional right, [the court's] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Lytle*, 560 F.3d at 410.  Therefore, a plaintiff's bystander liability claim can only survive "where the plaintiff can allege and prove 'another officer's use of excessive force.'" *Robinson v. Meeks*, No. 3:17-CV-606-K, 2018 WL 1399478, at *13 (N.D. Tex. Mar. 20, 2018) (quoting *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 481 (5th Cir. 2014), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

Here, Stephenson bases his bystander liability claim on his allegation that Defendant Smith "[m]ade No effort to Stop the Abuse" allegedly committed by Defendant Skinner.  Questionnaire 2.  As previously addressed, Stephenson has failed to establish a genuine issue of material fact as to his excessive use of force claim, entitling both Defendants to the protection afforded by qualified immunity.  Because Stephenson has not shown a violation of his Fourth Amendment right, and that such right was "clearly established" at the time of the incident, his bystander liability claim against Defendant Smith is subject to dismissal as well.  *See Kitchen*, 754 F.3d at 481 ("[Bystander liability arises . . . only where the plaintiff can allege and prove another officer's [unlawful] use of force."); *Robinson*, 2018 WL 1399478, at *13 (dismissing plaintiff's bystander liability claim where the court previously found qualified immunity protected the defendants from the underlying excessive force claims).

## V.   Recommendation

For these reasons, the undersigned **RECOMMENDS** that the United States District Judge grant Defendants Skinner and Smith's Motion for Summary Judgment based on qualified immunity (ECF No. 50) and dismiss Stephenson's excessive force claim against Defendants

Skinner and Smith, and *sua sponte* dismiss Stephenson's bystander liability claim against Defendant Smith.

## VI.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September **28**, 2021

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**

34